The Honorable John C. Coughenour

1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7   NICHOLAS P. TIDES,

8                    Plaintiff,

9        v.

10  THE BOEING COMPANY,

11                   Defendant.

12  and

13  MATTHEW NEUMANN,

14                   Plaintiff,

15       v.

16

17  THE BOEING COMPANY

18                   Defendant.

No. 2:08-cv-1601 JCC

No. 2:08-cv-1736 JCC

**DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

**NOTED ON MOTION CALENDAR:**

**December 4, 2009.**

**ORAL ARGUMENT REQUESTED**

19

20                   **I.  INTRODUCTION AND RELIEF REQUESTED**

21        Plaintiffs were fired from Boeing for creating an unacceptable risk to the Boeing

22  Company when they engaged in unauthorized communications and provided documents to a

23  reporter.  Plaintiffs admit this misconduct, but claim that their firing was in fact due to their

24

Motion for Summary Judgment (No. 08-1601)        1        McGuire Woods LLP
                                                          One James Center
                                                          901 East Cary Street
                                                          Richmond, Virginia 23219-4030
                                                          804-775-1000

alleged whistleblowing activities.  Defendant moves the Court for an order dismissing all claims for three independent reasons.  First, Plaintiffs cannot meet their burden of showing that they engaged in any activity protected by the Sarbanes-Oxley Act ("SOX").  Second, Plaintiffs cannot meet their burden of showing that the individuals responsible for the decision to terminate them were aware of any alleged whistleblowing activity.  And third, Plaintiffs cannot meet their burden of showing any alleged whistleblowing activity was a contributing factor to their terminations.

As alternative grounds for dismissal, Defendant demonstrates herein by clear and convincing evidence that it would have terminated Plaintiffs for misconduct even if they had not engaged in any alleged whistleblowing activity.

For these reasons, Defendant moves the Court for an order dismissing each and every one of Plaintiffs' claims with prejudice.

## II.  FACTS

Plaintiffs were each fired from Boeing for creating an unacceptable risk to the Boeing Company when they engaged in unauthorized communications with a reporter for the now-defunct Seattle P-I and provided company documents to the reporter.  Plaintiffs admit they engaged in this conduct.  Each plaintiff speculates that he was fired for engaging in activity protected by the Sarbanes-Oxley Act, but neither plaintiff can offer any evidence supporting their suppositions.  In fact, prior to their termination Plaintiffs did not engage in any activity protected under the Sarbanes-Oxley Act.  Their termination was completely unrelated to any

alleged protected activity.  For these reasons, their claims should be dismissed with prejudice.

## A.    Boeing IT Sox Auditors

Section 404 of SOX requires management of publicly-traded companies, such as Boeing, to assess the design and operational effectiveness of their internal controls over financial reporting.[1]  Under SOX, public companies must publish an internal control report as part of the annual shareholders' report, affirming "the responsibility of management for establishing and maintaining an adequate internal control structure and procedures for financial reporting."  15 U.S.C. § 7262(a).  The report must "contain an assessment, as of the end of the most recent fiscal year of the Company, of the effectiveness of the internal control structure and procedures of the issuer for financial reporting."  *Id*.

In addition, Section 404 requires an ***external*** auditor to attest to the assessments made by the company management, and to perform its own testing to arrive at an independent opinion as to the effectiveness of a company's internal controls over financial reporting.  15 U.S.C. § 7262(b).  Both SOX and the regulations promulgated under SOX impose restrictions and requirements on the activities of the ***external*** auditor.  *See, e.g. Auditing Standard 5*, (SEC Release No. 34-55912; File No. PCAOB-2007-02, June 15, 2007).  These requirements

---

[1] A "control" is simply a policy or procedure that is designed to prevent or detect an undesirable outcome.  For example, reconciling a bank account is designed to ensure that all transactions are accurate, recorded, and proper – thereby ensuring the accuracy of the account records and preventing overdrawing the account.  Wescott Dec. ¶7.

McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
804-775-1000

and restrictions do not apply to **internal** auditors.  *Id.*  Deloitte & Touche LLP ("Deloitte") is

Boeing's sole independent **external** auditor.  Wescott Decl. ¶ 3.  Each year since SOX became

effective, Deloitte has deemed Boeing's internal controls over financial reporting effective.

Wescott Decl. ¶ 4.

Boeing's Corporate Audit organization, within the Office of Internal Governance, is

responsible for assisting Boeing's Office of Financial Compliance and Boeing's management

accomplish compliance with the **internal** implementation and reporting requirements of SOX.

Wescott Decl. ¶ 5.   In 2007, Corporate Audit had two groups performing auditing and

testing.  Wescott Decl. ¶ 6.   One group, Audit SOX Finance, performed audits and testing on

financial control groups.  Wescott Decl. ¶ 6.   The other audit group, Audit IT SOX,

performed audits and testing on information technology controls.[2]  Wescott Decl. ¶ 6.   The

Audit IT SOX group was staffed by Boeing employees and supplemented by contractors

provided by PricewaterhouseCoopers ("PwC").  Wescott Decl. ¶ 9.   PwC was not engaged to

conduct its own independent audit, and has never served as Boeing's **external** auditor.

Wescott Decl. ¶ 10.   During the relevant time periods, Plaintiffs were both employed by

Boeing as auditors in the Audit IT SOX group and were not employed to conduct independent

audits.  Wescott Decl. ¶ 11.

---

[2] Information technology controls, or IT controls, are a subset of an organization's controls that ensure the
confidentiality, integrity, and availability of data and the overall management of the IT function of the
organization.  For example, a procedure requiring testing and approval of software before installation on an
organization's computer is an IT control.   Wescott Dec. ¶8.

McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
804-775-1000

Auditors in the Audit IT SOX group prepare, conduct, and document audits, and communicate audit results to IT participants.  Wescott Decl. ¶ 12.   These functions help the IT participants understand Boeing's guidance related to operational design and effectiveness of the IT controls, and allow Boeing managers to assess and mitigate any risks posed by inadequate controls.  Wescott Decl. ¶ 13.   The information developed by the auditors is one piece of information that IT managers use to evaluate the effectiveness of their IT controls.  Wescott Decl. ¶ 14.   The assessment of the IT managers is reported up the chain and combined with other information.  Wescott Decl. ¶ 15.   Eventually, this compilation and distillation of information reaches the Senior Manager for Financial Compliance, the Audit Committee, and the Senior Management of Boeing, who evaluate it and use it in the preparation of the annual assessment and statement required under SOX.  Wescott Decl. ¶ 16.

**B.     Mr. Neumann's Allegations of Protected Activity**

Matthew Neumann was hired by the Boeing Company in 1997, moved into auditing in 2004, and became a member of the Audit IT SOX Group in January of 2007.  Neumann Dep. 8:20-13:11.[3]  From the beginning of his stint in the Audit IT SOX Group, Mr. Neumann expressed dissatisfaction with the management of the group, the use of PwC contractors, and various other personnel and management issues.  However, none of these complaints were

---

[3] All deposition excerpts are filed herewith as Exhibit K.

McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
804-775-1000

related to shareholder fraud, and none were protected activity as defined by SOX.  Ex. A.[4]

Mr. Neumann's first alleged "protected activity" was a meeting in February of 2007, in which he and others complained about the management style of Ms. Moring, his manager, and the use of PwC contractors to complete internal auditing work.  *Id*.; Neumann Dep. 23:13-28:23.   Neumann alleges that he complained of three things related to the use of PwC contractors which he alleges violated Section 103 of SOX.[5]  First, that the use of PwC for both internal auditing of IT controls and design of IT controls violated SOX.[6]  Second, that using PwC contractors to supervise the work of internal auditors violated SOX.  Third, that Boeing's procedures regarding the hiring and professional development of auditors violated SOX.  Ex. A.  Mr. Neumann is unable to demonstrate that any of these issues led or had the potential to lead to misstatements on Boeing's annual report.  Neumann Dep. 31:12-32:6.

Mr. Neumann next alleges that in April of 2007, he complained to Nancy Ross-Dronzek, a Boeing Manager, about Boeing's use of PwC contractors who did not have substantial IT SOX Audit experience, which he now alleges is a violation of Section 103 of

---

[4] Boeing denies that Mr. Neumann ever mentioned SOX or fraud in any of his complaints, but for purposes of summary judgment, the Court must assume his allegations regarding this dispute of fact are true.

[5] As demonstrated below, Section 103 of SOX has no application to internal auditors.

[6] Boeing disputes this was raised by Mr. Neumann at this meeting, but for purposes of this summary judgment motion concedes that the Court must assume he did.

SOX.[7]  Ex. A; Neumann dep. 34:1-35:13.  Mr. Neumann believed that inexperienced auditors may be more susceptible to manipulation by managers, which in turn might allow management to manipulate the results of audits that the Audit IT SOX group was making, and that somehow, this would lead to an inaccurate statement on the annual report.  Neumann Dep. 36:18-37:2.  Mr. Neumann also complained at this meeting about his manager, Macy Moring.  Neumann Dep. 35:8-13.

Mr. Neumann next claims that later in April of 2007, he repeated his allegations about the use of inexperienced PwC contractors and the use of PwC contractors to write and audit controls, this time alleging that this arrangement violated Section 201(a) of SOX.[8]  Ex. A; Neumann Dep. 39:17-41:2.  Mr. Neumann admits that he did not actually observe any PwC employees "colluding" on design and testing of audits.  Neumann Dep. 41:8-11; 46:22-25.

Next, Mr. Neumann alleges that in July of 2007, he complained about the use of a "materially misleading" handout (Neumann Dep. Ex. 4, p.11.), which he claimed misstated the "pass rate" of controls tested to date.  Mr. Neumann claims that including controls categorized as "not rated" in the overall pass rate was materially misleading.[9]  Mr. Neumann

---

[7] Again, Section 103 of SOX has no application to internal auditors.

[8] As with Section 103, Section 201(a) has no application to internal auditors.

[9] "Not rated" controls were controls that were evaluated and found to be effectively designed, but which have not been fully tested for operational effectiveness, usually because the controls have not been triggered.  For example, disaster recovery controls cannot be tested in the absence of a triggering disaster.  The definition of

McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
804-775-1000

claimed this violated Section 404 of SOX.[10]  Ex. A.  Mr. Neumann alleges that he later

complained about this matter to other managers.  *Id*.  Neumann admits, however, that he does

not know how this information was used.  Neumann Dep. 57:1-18.

Mr. Neumann next alleges that he informed Dianne Kallunki, a Human Resources

Manager, about his concerns during an interview she had with him regarding working

conditions in the Audit IT SOX group in August of 2007.  Ex. A; Neumann Dep. 66:6-15;

72:23-73:6.

Finally, Mr. Neumann alleges he complained to an Ethics Advisor, Jeff Culp, about his

concerns regarding PwC and the harassment he and Mr. Tides were allegedly undergoing.  Ex.

A; Neumann Dep. 73:13-22; 75:89-16.

Mr. Neumann does not allege that any of his complaints encompassed actual, ongoing

fraud.  Instead, he alleges that he was "reporting conditions that could lead to it being

extremely easy to perpetuate fraud."  Neumann Dep. 79:21-22.   Mr. Neumann transferred out

of the Audit IT SOX Group at the end of August, 2007.

### C.    Mr. Tides' Allegations of Protected Activity

Like Mr. Neumann, Mr. Tides expressed dissatisfaction with the management of the

Audit IT SOX Group, the use of PwC contractors, and other general personnel and work-

related issues.  Like the complaints of Mr. Neumann, none of Mr. Tides' complaints were

---

"not rated" was included in the PowerPoint presentation Neumann and Tides complain about.  Neumann Dep. Ex. 4, p.29.

activities protected by SOX.

Mr. Tides alleges five acts of protected activity.  Ex. B.  The first allegedly protected activity listed is the same complaint made by Mr. Neumann about the interim review slide that counted "not tested" controls in the overall pass rate.  *Id.*; Tides Dep. 34:14-35:3.  Like Mr. Neumann, Mr. Tides cannot present any evidence that shows this slide was used in any way in Boeing's SEC reporting.  Tides Dep. 66:18-24; 68:14-69:6.

Mr. Tides' second listed act of alleged protected activity was a July 3, 2007, complaint that PwC contractors in the Audit IT SOX Group were "colluding" with PwC contractors who aided in the design of IT controls.  Ex. B; Tides Dep. 69:17-70:6.  Mr. Tides alleges that this activity violated Auditing Standard No. 2[11] and Section 404 of SOX.[12]  Mr. Tides believes that these PwC employees were colluding because he saw them in meetings together, but admits he does not know what was said during those meetings.  Tides Dep. 75:2-8.  Nonetheless, Mr. Tides contends the actions of PwC violated Sections 103, 202, and 404 of SOX.  Tides Dep. 79:12-81:4.

Mr. Tides' third alleged protected activity is his claim that in May or June of 2007 he reported that "unqualified" people could "improperly" change audit ratings in the database

---

[10] As demonstrated below, Section 404 of SOX has no application to these claims.

[11] Auditing Standard No. 2 was superseded by Auditing Standard No. 5 in the fall of 2007.  As demonstrated below, neither Auditing Standard applies to internal auditing.

[12] As demonstrated below, Section 404 has no application to these claims.

McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
804-775-1000

used to record findings, called Risk Navigator.  Ex. B; Tides Dep. 87:1-87:12.  Mr. Tides

alleges that this was a violation of SOX because "it goes to the effect of integrity up to the

audit results themselves."  Tides Dep. 89:8-20.

Mr. Tides' fourth allegedly protected activity was a complaint to Nancy Ross-Dronzek

that PwC was hiring unqualified people to work in the Audit IT SOX Group.  Ex. B.

The final act that Mr. Tides alleges is protected activity is a complaint he claims to

have made in March of 2007 that Boeing's records retention policy was not compliant with

SOX requirements.  Ex. B; Tides Dep. 91:17-22.  Mr. Tides claimed that during orientation a

Boeing employee stated "we only hold records for three years."  Mr. Tides contends this

violates Section 103 and 802 of SOX.  Tides Dep. 91:23-92:4.

### D.      Media Leak Investigation and Termination of Tides and Neumann

In order to protect its assets, Boeing requires that proprietary information remain

confidential and that Boeing employees disclose Company information to the news media only

through authorized avenues of communication within the Company.  Boeing has adopted a set

of policies and procedures to ensure that its information is not compromised and that

employees know and understand the necessary steps that must be taken before any Company

information is shared with outsiders.  Neumann Dep. 97:4-21, 159:19-160:3; Tides Dep. Ex.

9, 10.  Both Mr. Tides and Mr. Neumann were aware of these policies.  Tides Dep. 97:16-

98:7; 98:24-99:11; 136:7-20; Neumann Dep. 97:5-11.  In fact, they were reminded of this

policy in an email from their supervisor in April of 2007.  Neumann Dep. 99:15-100:12; Tides

McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
804-775-1000

Dep. 164:19-165:16.

In May of 2007, Boeing learned that unknown employees, likely in the Audit IT SOX group, had spoken with and provided Company documents to Andrea James, a reporter for the Seattle P-I.  Exhibit C.  The Company initiated an investigation that included monitoring Boeing computers used by employees in the Audit IT SOX Group.  Computer monitoring led to the discovery that Mr. Neumann and Mr. Tides each engaged in unauthorized communications with Ms. James and provided her with company documents.  *Id*.; Exhibit D. In fact, Mr. Neumann even forwarded to Ms. James an email he received from his supervisor reminding him of Boeing's policies for communicating outside of the Company.  Ex. D.

On September 19, 2007, Mr. Neumann and Mr. Tides were separately interviewed by Boeing investigators.  Mr. Neumann admitted that he had spoken with Ms. James and provided her with information and documents without Company approval.  Ex. D; Neumann Dep. 101:17-25; 114:25-116:17.  Similarly, Mr. Tides admitted releasing Company information to Ms. James without authorization.  Ex. C; Tides Dep. 109:7-131:13.

Immediately following these interviews, each Plaintiff was placed on suspension. Tides Dep. 135:7-11; Neumann Dep. 125:10-126:2.  The matters were then referred to a Boeing Employee Corrective Action Review Board ("ECARB").    The function of an ECARB is to review, evaluate, and determine the disposition in certain cases of employee misconduct.  Ex. E.  The ECARB is made up of at least five voting members (a chair, a senior level member of Human Resources, and at least three senior level employees, typically

McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
804-775-1000

managers), and a non-voting ethics advisor. Ex. E.  In addition, the employee's manager and

Human Resource Generalist attend the meeting.   The ECARB meeting to consider the Tides

and Neumann matters was convened on September 26, 2009.  Members of the ECARB were

provided with the investigative reports pertaining to Mr. Tides and Mr. Neumann, along with

the relevant Boeing Policies.  Ex. F.  Most of the ECARB members were not aware of any

complaints ever made by either Plaintiff.  *Id*.  There was no discussion of any complaints made

by the Plaintiffs during the ECARB meeting.  *Id*.  The only topic was their misconduct related

to the unauthorized release of Company information.[13]  *Id*.  The ECARB voted unanimously

to terminate the employment of each Plaintiff for a violation of Company policy – specifically,

"creating an unacceptable risk" when they provided information and documents to a reporter

in violation of Boeing policies.  Ex. G.  Mr. Neumann was informed of his termination on

October 1, 2007.  Neumann Dep. 125:23-24.  Mr. Tides was informed of his termination on

September 28, 2007.  Tides Dep. 166:14-17.  No protected activity allegedly engaged in by

either Plaintiff was discussed and no activity of that sort played any part in the disciplinary

decision of the ECARB.  Ex. F.  Indeed, Plaintiffs can identify no evidence to support their

supposition that they were fired for their alleged SOX protected activity.  Neumann Dep.

133:16-135:20; Ex. H; Tides Dep. 175:3-12; Ex. I.

On December 21, 2007, Mr. Neumann filed a whistleblower complaint with OSHA.

---

[13] And, in the case of Mr. Neumann, the improper use of his computer to access pornography and for use in

Neumann Dep. 19:17-24.  On December 26, 2007, Mr. Tides filed his whistleblower complaint with OSHA.  Complaint ¶40.  Both complaints were properly removed by Plaintiffs to this Court.

## III.  LAW AND ANALYSIS

Plaintiffs cannot meet their burden of showing any of the four elements required to make a *prima facie* case, other than the fact that they were terminated – admittedly an adverse employment action.  Plaintiffs cannot demonstrate that they engaged in any protected activity, that the managers who terminated their employment knew of any protected activity, that they suffered any legally cognizable adverse employment action other than termination, or that any protected activity was a contributing factor in their termination.  Furthermore, Boeing can demonstrate by clear and convincing evidence that Plaintiffs would have been terminated in the absence of any protected activity.

### A.    Plaintiffs Must Present Evidence Establishing a *Prima Facie* Case

Section 1514A(a)(1) of Title 18 prohibits employers of publicly-traded companies from "discriminat[ing] against an employee in the terms and conditions of employment" for "provid[ing] information ... regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders."  The statute only provides

---

his girlfriend's sex toys business.

protection when the information is provided to a Federal agency, a Member of Congress, or someone with either supervisory authority or investigative power within the company itself. 18 U.S.C. § 1514A(a)(2).

Section 1514A(b)(2) further specifies that § 1514A claims are governed by the procedures applicable to whistleblower claims brought under 49 U.S.C. § 42121(b). Section 42121(b)(2)(B), in turn, sets forth a burden-shifting procedure by which a plaintiff is first required to make out a *prima facie* case of retaliatory discrimination; if a plaintiff meets this burden, the employer assumes the burden of demonstrating by clear and convincing evidence that it would have taken the same adverse employment action in the absence of a plaintiff's protected activity.

The Department of Labor sets forth four required elements of a *prima facie* case under § 1514A: (1) "[t]he employee engaged in a protected activity or conduct"; (2) "[t]he named person knew or suspected, actually or constructively, that the employee engaged in the protected activity"; (3) "[t]he employee suffered an unfavorable personnel action"; and (4) "[t]he circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the unfavorable action."  29 C.F.R. § 1980.104(b)(1)(i)-(iv).  The Ninth Circuit has adopted these elements.  *Van Asdale v. International Game Technology*, 577 F.3d 989, 996 (9th Cir. 2009).

Because Plaintiffs cannot meet their burden and cannot demonstrate facts supporting a prima facie case, the Court should dismiss this matter with prejudice.

Motion for Summary Judgment (No. 08-1601)          14

McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
804-775-1000

**B.      The Statute of Limitations Bars Any Alleged Adverse Employment Actions Other Than Plaintiffs' Termination.**

The only adverse employment action at issue here is the termination of the Plaintiffs' employment.  Any other allegedly adverse employment action occurred more than 90 days prior to Plaintiffs' filing of their complaints with OSHA.

An employee who alleges that his employer has retaliated against him in violation of SOX must file his complaint with OSHA within 90 days after the alleged violation occurred. 18 U.S.C.A. § 1514A(b)(2)(D).   Any alleged acts occurring prior to the 90th day prior to the filing of the Complaint are time-barred under the Act.  *Id.*; *Burke v. WPP Group, PLC., Olgilby & Mather Worldwide, Inc*., Case No. 2007-SOX-00016 (ALJ: May 8, 2008), 2008 WL 6651039.  Adverse actions that occurred outside the 90-day period cannot be remedied. *Leznik v. Nektar Therapeutics, Inc*., Case No. 2006-SOX-00093 (ALJ: November 16, 2007), 2007 WL 5596626.

Mr. Neumann filed his OSHA complaint on December 21, 2007.  Ninety days prior to that was September 22, 2007.  Mr. Tides filed his OSHA complaint on December 26, 2007. Ninety days prior to that was September 25, 2007.  Mr. Neumann and Mr. Tides were each placed on probation on September 19, 2007, more than 90 days before they filed their OSHA complaints.  The only adverse employment action taken against Mr. Tides and Mr. Neumann within the 90-day window was their termination.  Any other claims of adverse employment

actions are therefore time barred.[14]

### C.   Plaintiffs Did Not Engage in Any Protected Activity.

Mr. Tides and Mr. Neumann complained about their managers, about the way Boeing used outside contractors, about the tools they used, and even about the way certain information was presented.  However, they did not complain about fraud or any other activity protected by SOX.  Because Plaintiffs cannot present evidence demonstrating that they engaged in protected activity, the Court should dismiss their claims.

In order to meet their burden and establish a *prima facie* case, Plaintiffs must show that they actually engaged in activity protected by SOX.  In *Platone v. FLYi, Inc.*, Case No. 04-154 (ARB: Sept. 29, 2006), 2006 WL 3246910, the Administrative Review Board of the Department of Labor emphasized that the "relevant inquiry" in determining whether an employee engaged in protected activity is focused on the allegations the employee "actually communicated to his employer prior" to the termination action. *Platone*, No. 04-154 at 17.  In order to meet their burden, Plaintiffs must present evidence that demonstrates their complaints involved activity that definitively and specifically related to one of the categories of fraud listed in the statute, and that they objectively and subjectively believed that they were reporting activity that fell within those categories of fraud.  This, Plaintiffs cannot do.

---

[14] In the event the Court finds that Plaintiffs can meet their burden on each of the other elements of their claim, Defendant requests that the Court grant partial summary judgment, dismissing any claim based on an adverse employment action other than the termination of Mr. Tides and Mr. Neumann.

Motion for Summary Judgment (No. 08-1601)      16

1
2

**1.     Plaintiffs Must Demonstrate That Their Complaints "Definitively and Specifically" Related to One of the Enumerated Categories of Fraud.**

3

In *Platone v. FLYi, Inc.*, Case No. 04-154 (ARB: Sept. 29, 2006), 2006 WL 3246910,

4

the Board held that, to constitute protected activity under Sarbanes-Oxley, an "employee's

5

communications must 'definitively and specifically' relate to [one] of the listed categories of

6

fraud or securities violations under 18 U.S.C.[ ] § 1514A(a)(1)." The Ninth Circuit applies

7

the identical requirement, *Van Asdale v. International Game Technology*, 577 F.3d 989, 996-

8

97 (9th Cir. 2009), as does every other circuit to address the question. *See Day v. Staples,*

9

*Inc.*, 555 F.3d 42, 55 (1st Cir. 2009) ("The employee must show that his communications to

10

the employer specifically related to one of the laws listed in § 1514A."); *Welch v. Chao*, 536

11

F.3d 269, 275 (4th Cir. 2008) ("[A]n employee must show that his communications to his

12

employer definitively and specifically relate to one of the laws listed in § 1514A.") (internal

13

alteration and quotation marks omitted); *Allen v. Admin. Review Bd.*, 514 F.3d 468, 476 (5th

14

Cir. 2008) ("We agree with the [Board's] legal conclusion that an employee's complaint must

15

definitively and specifically relate to one of the six enumerated categories found in § 1514A.")

16

(internal quotation marks omitted). In other words, "the whistleblowing cannot be vague."

17

*Walton v. Nova Information Systems*, 2008 WL 1751525, *8, No. 06-cv-292 (E.D. Tenn.

18

2008) (*citing Van Asdale v. Int'l Game, Tech*, 498 F. Supp. 2d 1321, 1330 (D. Nev. 2007)).

19
20

Here, there is no claim of mail fraud, wire fraud, bank fraud, or securities fraud.

21

Plaintiffs must, therefore, demonstrate that their complaints definitively and specifically related

22
23
24

McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
804-775-1000

to violation of a rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders.  This, Plaintiffs cannot do.

Each violation listed in § 1514A, with the exception of the fifth rule, "a violation of a rule or regulation of the Securities and Exchange Commission," refers explicitly to a company's fraud.  While not explicit, the violations described in the fifth rule also ally only to rules and regulations prohibiting fraud.  *Livingston v. Wyeth, Inc.*, 520 F.3d 344, 351 n.1 (4th Cir. 2008); *see also*, *Allen v. Administrative Review Board*, 514 F.3d 468, 480 n.8 (5th Cir. 2008) ("We note that several ALJs have held that fraud is an essential element of ***all whistleblower claims*** arising under § 1514A, which necessarily includes an element of intentional deceit." (emphasis in original) (*citing Gale v. World Fin. Group*, ALJ Case No.2006-SOX-43, 2006 WL 3246898, at *4 (ALJ June 9, 2006); *Wengender v. Robert Half Int'l, Inc.*, ALJ Case No.2005-SOX-59, 2006 WL 3246887, at *11 (ALJ March 30, 2006); *Marshall v. Northrup Gruman Synoptics*, ALJ Case No.2005- SOX-8, 2005 WL 4889013, at *3 (ALJ June 22, 2005)).

Likewise, while securities fraud and fraud against shareholders are not further defined in the Act, the Board noted that elements of a cause of action for securities fraud "are rooted in common-law tort actions for deceit and misrepresentation."  *Platone*, No. 04-154 at 15.  Those elements include a material misrepresentation, scienter, and causal connection between the misrepresentation and harm.  *Platone*, No. 04-154 at 17.

Plaintiff's complaints do not relate to the enumerated statutes, are vague and

conclusory, and do not touch upon the areas of fraud protected by SOX.

> **2.    Plaintiffs Must Also Demonstrate That They Held An Objectively Reasonable Belief That Any Conduct Reported Violated a Listed Law.**

In addition to the requirement that Plaintiffs complained about activities listed in the whistleblower statute, in order to demonstrate protected activity an employee must also demonstrate that he had (1) a subjective belief that the conduct being reported violated a listed law,[15] and (2) this belief must be objectively reasonable. *See Harp v. Charter Communications, Inc.*, 558 F.3d 722, 723 (7th Cir. 2009); *Day*, 555 F.3d at 54; *Welch*, 536 F.3d at 275; *Allen*, 514 F.3d at 477 ("We agree that an employee's reasonable belief must be scrutinized under both a subjective and objective standard."); S.Rep. No. 107-146, at 19 (2002) ("[S]ubsection (a)(1) ... is intended to impose the normal reasonable person standard used and interpreted in a wide variety of legal contexts."). *Van Asdale*, 577 F.3d at 1000-01.

In order "[t]o have an objectively reasonable belief there has been shareholder fraud, the complaining employee's theory of such fraud must at least approximate the basic elements of a claim of securities fraud." *Day*, 555 F.3d at 55; *Van Asdale*, 577 F.3d at 1001.  The Supreme Court has explained that a private action for securities fraud "resembles, but is not identical to, common-law tort actions for deceit and misrepresentation," and that its elements include a material misrepresentation or omission, scienter, a connection with the purchase or

McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
804-775-1000

sale of a security, reliance, economic loss, and loss causation.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42, (2005).  Similarly, the Ninth Circuit has held that, in order to prove securities fraud under Rule 10b-5, a plaintiff must demonstrate "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss."  *In re Daou Sys., Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005).

Finally, in one type of employment situation, certain reporting of alleged violations is not a protected activity.  In *Sasse v. USDOL*, No. 04-3245 (6th Cir. May 31, 2005) (cases below ARB No. 02-077 and ALJ No. 1998 CAA 7), the appellate court affirmed an administrative law judge's determination that an Assistant United States Attorney did not engage in whistleblower protected activities since his investigation of environmental violations and participation in related proceedings were accomplished in the course of his assigned duties. The court observed that "whistleblower protection provisions protect employees who risk their job security by taking steps to protect the public good."  *Id*. at 4.  However, when those activities are part of an individual's assigned work, then he "cannot be said to have risked his personal job security by performing duties required of him in that job."  *Id*.; *Robinson v. Morgan Stanley*, 2005 SOX 44 (ALJ: March 26, 2007), 2007 WL 5577962.

In the instant case, none of Plaintiffs' complaints involve shareholder fraud or

_____

[15] In this case, Boeing may present evidence that Plaintiffs' various complaints were made in bad

violations of SEC rules and regulations. Objectively, none of Plaintiffs' complaints are reasonably related to shareholder fraud or SEC rules and regulations.  Finally, with respect to any claims Plaintiffs may make that the nature of their jobs meant that any audit findings were protected activity, the *Sasse* and *Robinson* cases hold the contrary.

### 3.       Mr. Neumann's Complaints Were Not Protected Activity

Mr. Neumann alleges six acts of protected activity.  None of these involve fraud against shareholders or violations of any SEC rules or regulations.

Mr. Neumann first alleges he complained about the use of PwC contractors, and that Boeing's use of PwC contractors violated § 103 of SOX.  However, § 103 of SOX applies only to "registered public accounting firms in the preparation and issuance of audit reports." That is, **external** auditors.[16]  This section simply has no application to the way Boeing chooses to implement and evaluate its internal controls.  *See* 15 U.S.C. § 7213; *accord, Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168, 1170 n.1 (10th Cir. 2006).  Because the law does not apply to the facts, there is no objective basis to believe that Mr. Neumann's complaints could be protected activity.

Plaintiffs can identify no law that prohibits Boeing from using PwC contractors in any

---

faith or that the plaintiffs could not have reasonably believed their claims were valid, but for purposes of this motion the Court may presume the plaintiffs had a subjective belief that their allegations violated the law.

[16] For purposes of SOX, the term "audit report" means the attestation of a registered public accounting regarding compliance with securities laws.  15 U.S.C. § 7201(4).  An "audit" is the examination of financial statements by an independent public accounting firm for the purposes of expressing an opinion on those

McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
804-775-1000

1  manner they desire in conjunction with the design, implementation, and testing of internal

2  controls.   Nor can Plaintiffs point to any act of fraud in the use of PwC contractors.  Nor is

3  there any evidence of any material misrepresentation or scienter in connection with the sale of

4  securities.  There is simply no evidence of fraud whatsoever.  Thus, the facts alleged here fail

5  to demonstrate any protected activity and cannot support a claim of whistleblower retaliation.

6       Mr. Neumann's second allegation is that he complained to a senior manager about

7  PwC and about his supervisor, Macy Moring.  Again, he claims his complaints touched upon §

8  103 of SOX.  However, since neither of these topics involve the ***external*** auditor, Deloitte &

9  Touche, §103 is inapplicable.  Nor is there any allegation of shareholder fraud related to this

10 claim.  Because the law does not apply to these complaints, Plaintiffs cannot demonstrate that

11 these complaints were objectively related to the listed categories of protected complaints.

12 Thus, the facts alleged here fail to demonstrate any protected activity and cannot support a

13 claim of whistleblower retaliation.

14      Mr. Neumann's third allegation is that he reported that PwC contractors were engaged

15 in both designing and testing internal controls, which he claims violates § 201(a) of SOX.

16 First, Mr. Neumann admits that he does not know that PwC contractors were actually

17 "colluding" with each other.  Neumann Dep. 41:8-11; 46:22-25.  Nonetheless, even if he

18 could produce such evidence, section 201(a) prohibits only "a registered public accounting

---

statements.  15 U.S.C. § 7201(2).  While Plaintiffs were called "Auditors" by Boeing, they were not engaged in
an "audit" as defined by SOX.

McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
804-775-1000

firm … that performs for any issuer any audit," from certain conflicts of interest.  As previously noted, this applies only to ***external*** auditors.  This statute has no application to the work of Boeing auditors, or PwC auditors working internally with Boeing.  *See In re: WorldCom, Inc.*, 311 B.R. 151, 169-70 (Bkrtcy. E.D.N.Y. 2008).  Nor is there any allegation of shareholder fraud related to this claim.  Because the law does not apply to these claims, Plaintiffs cannot demonstrate an objective belief that the acts complained of violated one of the listed laws.  Thus, the facts alleged here fail to demonstrate any protected activity and cannot support a claim of whistleblower retaliation.

Mr. Neumann's fourth allegation is that he informed managers that the "pass rate" percentage numbers on a PowerPoint slide presented in July of 2007 were inaccurate.  Mr. Neumann claims this violates § 404 of SOX.  Mr. Neumann admits that he does not know how the information on the slide was used.  Neumann Dep. 57:1-18.  Because of this, Mr. Neumann cannot demonstrate that the numbers he claims were inaccurate were ever reported to the shareholders or the SEC.  In fact, these were internal tracking numbers, and are not reported on the annual report or on any other report.  "A disagreement with management about internal tracking systems which are not reported to shareholders is not actionable." *Day v. Staples, Inc.*, 555 F.3d 42, 56 (1st Cir. 2009).  In *Day*, the plaintiff complained about certain "data manipulation" that was unrelated to the financial condition of the company, and not reported to shareholders.  The Court held that the plaintiff's claim lacked "objective reasonableness," and dismissed his claim.  Here, Mr. Neumann's allegations concerning the

McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
804-775-1000

PowerPoint slide is not protected activity and cannot support a claim of whistleblower

retaliation.  Furthermore, § 404 of SOX requires the SEC to prescribe rules concerning annual

reporting by companies and external auditors.  Nothing in that statute, and nothing in the

regulations promulgated under that statute, prohibits any activity alleged by Mr. Neumann.  17

C.F.R. §§ 210, 228, 229, 240; *Amendments to Rules Regarding Management's Report on*

*Internal Control Over Financial Reporting*, SEC Release No. 33-8809 (June 20, 2007)

(noting "there are many different ways to conduct an evaluation that will satisfy the evaluation

requirement in the rules, and the Interpretive Guidance clearly states that compliance with the

guidance is voluntary."); *Accounting Standard 5,* ¶1 (noting applicability only to **external**

auditors).  Because the law does not apply to these claims, Plaintiffs cannot demonstrate an

objective belief that the acts complained of violated one of the listed laws.  Furthermore, there

is no evidence of any material misrepresentation or scienter in connection with the sale of

securities. The facts alleged here fail to demonstrate any protected activity and cannot support

a claim of whistleblower retaliation.

Mr. Neumann's fifth allegation is that he informed Dianne Kallunki, a Human

Resources Manager, about his concerns regarding work conditions and the use of PwC

contractors.  None of these complaints relate to the enumerated causes of action protected by

SOX.  Mr. Neumann also contends that he complained about being pressured to provide

passing ratings on the work he completed.  This fails to state protected activity for three

reasons.  First, Mr. Neumann can present no evidence that he was actually being improperly

McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
804-775-1000

pressured to provide passing ratings on his work.  He says only that it was his perception based on how he was treated; Neumann Dep. 68:18-69:5; because managers would scrutinize his "not effective" findings; Neumann Dep. 69:6-17; and because he felt he did not have enough time to complete his work; Neumann Dep. 69:18-70:1.  Nowhere, however, does Mr. Neumann provide any evidence that this type of pressure was improper.  In fact, Mr. Neumann concedes that there may be legitimate business reasons for this type of "pressure."  Neumann Dep. 70:2-72:22.  Mr. Neumann is simply upset because Boeing allegedly allowed "business decisions to override [its] audit decisions.  Neumann Dep. 70:25-71:1.  Second, and more important, Mr. Neumann cannot identify any statute, rule, or regulation violated by this alleged pressure.  While at times he alleges generally that this type of "pressure" violated "auditor independence," he cannot point to any rule, regulation, or law that requires Boeing's internal auditors to be free from management oversight (or, for that matter, even overt pressure).  Third, any reporting made as part of Plaintiffs' jobs falls under the rule articulated in the *Sasse* and *Robinson* cases and cannot form the basis for protected activity.  Because the law does not apply to these claims, and because Plaintiffs cannot produce evidence of any material misrepresentation or scienter in connection with the sale of securities, Plaintiffs cannot demonstrate an objective belief that the acts complained of violated one of the listed laws.  The facts alleged here fail to demonstrate any protected activity and cannot support a claim of whistleblower retaliation.

Mr. Neumann's final allegation is that he repeated his complaints to Jeff Culp, an

ethics advisor.  For the reasons demonstrated above, the complaints made by Mr. Neumann are not protected activity.

### 4. Mr. Tides' Complaints Were Not Protected Activity

As with Mr. Neumann, none of Mr. Tides' complaints amount to protected activity pursuant to SOX.

Mr. Tides' first complaint mirrors Mr. Neumann's fourth complaint.  He alleges that he complained that certain numbers on a PowerPoint slide were misleading.  Like Mr. Neumann, Mr. Tides cannot identify any way in which the information on this slide was presented to shareholders or the SEC.  Tides Dep. 66:18-24; 68:22-6.  In fact, Mr. Tides admits that the report was an interim report, not a final annual report or other report to the SEC or shareholders.  Tides Dep. 40:10-12.  Nonetheless, Mr. Tides alleges that "if these overstatements were not corrected then violations of federal law had occurred (Section 404 of SOX)."  However, even if the numbers were misleading (which they were not), Mr. Tides' speculation about potential future fraud is insufficient to meet his burden of demonstrating protected activity.  The whistleblowing protections of SOX require a complaint about an *existing* violation.  18 U.S.C. § 1514A(a)(1); *Livingston v. Wyeth, Inc.*, 520 F.3d. 344, 352 (4th Cir. 2008) (finding no protected activity when alleged violation depended on speculative, multi-step reasoning).  A reasonable belief that a violation has occurred or is in progress cannot include a belief that a violation is about to happen upon some future contingency.  *Id.* (*citing Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 340-41 (4th Cir. 2006).

McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
804-775-1000

Because the law does not apply to these claims, and because Plaintiffs can produce no evidence of any material misrepresentation or scienter in connection with the sale of securities, Plaintiffs cannot demonstrate an objective belief that the acts complained of violated one of the listed laws.  The facts alleged here fail to demonstrate any protected activity and cannot support a claim of whistleblower retaliation.

Mr. Tides' second complaint is that PwC contractors were "colluding" with each other on the design and testing of internal controls.  Mr. Tides alleges this violates §§ 103, 201, and 404 of SOX.  As previously demonstrated, §§ 103 and 201 have no application to Boeing or its contractors, while § 404 does not impose any rules that are even arguably implicated by the conduct of which Mr. Tides complained.  Furthermore, Mr. Tides admits that he merely assumes that PwC contractor were colluding with each other – he does not have any actual evidence of this alleged collusion.  Tides Dep. 74:21-75:8 ("Q:  But other than that belief, you don't have any documents or proof that that was happening?  A:  Correct.").  This allegation was thoroughly investigated by Mr. Tides' manager and determined to be unfounded.  Ex. C. Because the law does not apply to these claims, and because Plaintiffs can produce no evidence of any material misrepresentation or scienter in connection with the sale of securities, Plaintiffs cannot demonstrate an objective belief that the acts complained of violated one of the listed laws.  The facts alleged here fail to demonstrate any protected activity and cannot support a claim of whistleblower retaliation.

Mr. Tides' third complaint is that individuals other than Boeing Auditors made

McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
804-775-1000

changes to Risk Navigator, the software tool used by Boeing to track auditor results of control testing.  However, Mr. Tides is unable to articulate how this violates any law or amounts to shareholder fraud in any way.  Mr. Tides testified only that changing information in Risk Navigator "goes to the integrity up to the audit results themselves."  He is unable to articulate, let alone prove, how this is a violation of the law or how it defrauds shareholders.  Because the law does not apply to these claims, and because Plaintiffs can produce no evidence of any material misrepresentation or scienter in connection with the sale of securities, Plaintiffs cannot demonstrate an objective belief that the acts complained of violated one of the listed laws.  The facts alleged here fail to demonstrate any protected activity and cannot support a claim of whistleblower retaliation.

Mr. Tides' fourth complaint is that Boeing hired "unqualified" PwC contractors to assist with the design and testing of internal IT controls.  Even if true, this allegation does not remotely state a claim for shareholder fraud or a violation of SEC rules and regulations relating to fraud (or indeed, any SEC rule or regulation).  Because the law does not apply to these claims, and because Plaintiffs can produce no evidence of any material misrepresentation or scienter in connection with the sale of securities, Plaintiffs cannot demonstrate an objective belief that the acts complained of violated one of the listed laws.  The facts alleged here fail to demonstrate any protected activity and cannot support a claim of whistleblower retaliation.

Mr. Tides' final complaint is that he was told that Boeing retained records for only three years.  Mr. Tides contends that this violates §§ 103 and 802 of SOX.  As previously

McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
804-775-1000

noted, § 103 is inapplicable to Boeing.  Likewise, § 802 requires the ***external*** auditor to retain records relating to the audit for seven years.  17 CFR § 210.2-06; *Retention of Records Relevant to Audits and Reviews*, SEC Release Nos. 33-8180, 34-47241 (March 3, 2003). Section 802 is not applicable to Boeing's records retention policy.  Because the law does not apply to these claims, and because Plaintiffs can produce no evidence of any material misrepresentation or scienter in connection with the sale of securities, Plaintiffs cannot demonstrate an objective belief that the acts complained of violated one of the listed laws. The facts alleged here fail to demonstrate any protected activity and cannot support a claim of whistleblower retaliation.

Because Plaintiffs cannot demonstrate that any of the items they complained about were related to shareholder fraud or violations of SEC rules and regulations, and because they cannot demonstrate that they could have had an objectively reasonable belief that their allegations were protected activity, the Court should find that the Plaintiffs did not engage in protected activity and should therefore dismiss the claims in their entirety.

**5.    None Of Plaintiffs' Complaints Were Material To Shareholders.**

Plaintiffs' belief that they were engaged in protected activity is also objectively unreasonable because they can make no showing that anything they complained about was material to shareholders.  The materiality requirement of fraud means that the complainant must believe there is a "likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information

made available." *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (*quoting TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). Thus "complaints about purely internal practices that are not financial in nature and are not reported to shareholders do not meet the materiality requirement for an objectively reasonable belief in shareholder fraud." *Day v. Staples, Inc.*, 555 F.3d 42, 58 (1st Cir. 2009); *Livingston v. Wyeth, Inc.*, 520 F.3d 344, 361 (4th Cir. 2008). Plaintiffs can present no evidence that the acts they allegedly complained about were material to shareholders. For that reason, Plaintiffs complaints were not related to fraud against shareholders and Plaintiffs could not have objectively believed their complaints were protected activity.

### 6.    Summary of Protected Activity Claims.

This case is strikingly similar to *Robinson v. Morgan Stanley*, 2005 SOX 44 (ALJ: March 26, 2007). In that case, Complainant, a senior internal auditor, alleged she was terminated for raising financial and security concerns related to SOX. The Complainant, like the Plaintiffs here, alleged she raised concerns about the independence, professionalism, and qualification of internal auditors. The Administrative Law Judge held that these concerns did not sufficiently relate to the six categories of SOX violations and therefore those complaints were not protected activity. Complainant, like the Plaintiffs here, alleged that she raised other concerns that represented significant financial, operational, and regulatory risks that could result in a financial loss and reflect insufficient internal control. The ALJ held that these generalized assertions did not satisfy the relatedness criteria for a SOX protected activity and

McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
804-775-1000

therefore these claims were not protected activity.  The Complainant, like the Plaintiffs here, alleged that she raised issues concerning the status of contractors, but the ALJ held that these concerns were not related to the six categories of SOX protected activity.  The Complainant, like the Plaintiffs here, alleged that she raised issues regarding disagreement on the importance of IT audit issues, lack of management attention to audits, and the level of reporting of audit findings.  Again the ALJ found these to be unrelated to the six categories of SOX protected activity.

Plaintiffs cannot demonstrate that any of the complaints they made were related to the six categories of SOX protected activity.  Plaintiffs can produce no evidence of any material misrepresentation or scienter in connection with the sale of securities.  Plaintiffs cannot show that they could have objectively believed that any of their complaints related to SOX protected activity.  None of Plaintiffs complaints could have been material to a reasonable investor.  For each of these reasons, Plaintiffs have failed to meet their burden to establish a *prima facie* case.  The Court should dismiss these claims.

**D.     Plaintiffs Cannot Demonstrate That the Managers Who Fired Them Had Knowledge of Any Protected Activity.**

The managers who made the decision to terminate the employment of Plaintiffs were members of the ECARB.  Plaintiffs cannot demonstrate that the members of the ECARB had any knowledge of any protected activity Plaintiffs allegedly engaged in.

In addition to proving that they engaged in protected activity, in order to establish a *prima facie* case under § 1514A, the Plaintiffs also must establish that "[t]he named person

McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
804-775-1000

knew or suspected, actually or constructively, that the employee engaged in the protected activity." 29 C.F.R. § 1980.104(b)(1)(ii). *Van Asdale*, 577 F.3d at 1002. Section 1980.101, in turn, defines "named person" as "the employer and/or the company or company representative named in the complaint who is alleged to have violated the Act." 29 C.F.R. § 1908.101.

Here, the evidence demonstrates that the decision to terminate the employment of Mr. Tides and Mr. Neumann was made by the members of the ECARB, who considered only the investigative report and the relevant Boeing policies. Plaintiffs cannot meet their burden of showing that the ECARB members were aware of any protected activity Mr. Tides or Mr. Neumann might have engaged in. Indeed, as demonstrated above, Plaintiffs did not engage in any protected activity. However, even if they had, that information was not made available to the members of the ECARB. Each ECARB member testifies that consideration was given only to the investigation reports regarding unauthorized release of information outside of the Boeing Company, and the relevant Boeing policies and procedures. Each ECARB member denies receiving any other information and Plaintiffs have no evidence to the contrary.

Because Plaintiffs cannot demonstrate that the managers who terminated them had knowledge of any allegedly protected activity, they cannot make out a *prima facie* case and their claims should be dismissed.

**E.    Plaintiffs Cannot Demonstrate That Any Protected Activity Was a Contributing Factor To The Termination of Their Employment.**

The final element of a prima facie case under § 1514A is that "[t]he circumstances

McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
804-775-1000

were sufficient to raise the inference that the protected activity was a contributing factor in the unfavorable action." 29 C.F.R. § 1980.104(b)(1)(iv).  *Van Asdale*, 577 F.3d at 1003.  The Ninth Circuit has held that "causation can be inferred from timing," in certain circumstances where an adverse employment action follows "on the heels" of protected activity.  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002).  However, "a specified time period cannot be a mechanically applied criterion."   Nor can the court analyze temporal proximity "without regard to its factual setting." *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir.2003).

Here, any temporal inference is broken by the intervening fact of Plaintiffs' admitted violation of Boeing policy regarding release of information outside of the company.  In *Klopfenstein v. PPC Flow Technologies Holdings, Inc*., ARB Nos. 07-021, 07-022, ALJ No. 2004-SOX-11 (ARB Aug. 31, 2009), the Board affirmed the ALJ's holding that the Complainant failed to prove that his complaints about an overstatement of revenue were a contributing factor in the decision to discharge him.  The evidentiary value of the temporal proximity of the alleged protected activity was defeated by the intervening event that the Complainant had been found to have violated a company policy on revenue recognition.  Here, any temporal proximity claimed by Plaintiffs is interrupted by their admitted violation of Boeing policy regarding release of information outside of the company.  *Accord, Leak v. Dominion Resources Services, Inc*., ARB Nos. 07-043 and 07-051, ALJ No. 2006-SOX-12 (ARB May 29, 2009) (Intervening event breaks temporal inference of causation).

McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
804-775-1000

Similarly, in *Grove v. EMC Corp.*, 2006-SOX-99 (ALJ July 2, 20007), the ALJ found that the Complainant did not meet his burden of proving that protected activity was a contributing factor in his termination.  The ALJ acknowledged that the SOX contributing factor standard is a relatively low hurdle, but found that the evidence clearly showed that the termination decision was not based on conduct protected under SOX. The decision to terminate the Complainant was initiated when the Complainant failed to appear at a mandatory training session by a manager who at that time did not know about the Complainant's protected activity.  Here, the decision to terminate Plaintiffs was initiated when they released information outside of the Boeing Company without following procedures and was implemented by managers who did not know about Plaintiffs' alleged protected activity.

Because Plaintiffs offer no evidence showing that any alleged protected activity was a contributing factor in their terminations, they cannot make a *prima facie* case and the Court should dismiss their claims.

**F.     Boeing Management Would Have Terminated Plaintiffs Even If They Had Not Engaged in Any Alleged Protected Activity.**

Even if Plaintiffs were to make a *prima facie* case, Defendant may obtain summary judgment if it shows by clear and convincing evidence that it would have terminated the Plaintiffs even absent any protected activity.  18 U.S.C. § 1514A(b)(2)(A); 49 U.S.C. § 42121(b)(2)(B); *Van Asdale*, 577 F.3d at 1004.

Here, Plaintiffs cannot dispute the fact that the ECARB terminated them for violations of Boeing's policy regarding the release of information outside of the company.  The members

of the ECARB all state that they did not consider anything other than the investigation reports and the relevant Boeing policies in deciding to terminate Plaintiffs' employment.  Thus, regardless of any protected activity engaged in by Plaintiffs, the result would be the same. Plaintiffs would have been terminated.

Plaintiffs may claim that they should not have been terminated for their violations, either because they were not serious violations, or that they did not believe they were violating Boeing policy.  This argument must fail.  The relevant standard is not what Plaintiffs believe, but rather what the managers taking the action believed at the time they took the action, and on this point, Plaintiffs can present no contradictory evidence.   In *Pardy v. Gray*, 1:07-cv-06324-LAP (S.D.N.Y. July 15, 2008), the court found that the Defendants had established by clear and convincing evidence that the Plaintiff's termination was based on performance related issues unrelated to her protected activity.  The court stated that "[a]s a legal matter, Plaintiff's own assessment of her performance is not cognizable on summary judgment; it is her employer's assessment that controls."  Slip op. at 17, *citing Ricks v. Conde Nast Publications Inc.*, 6 Fed. Appx. 74, 78 (2d Cir. 2001) (In a Title VII case, "an employee's disagreement with her employer's evaluation of her performance is insufficient to establish discriminatory intent.").  The *Pardy* court went on to find that it was undisputed that the employer received complaints from co-workers about the Plaintiff's poor performance and relied upon those complaints in terminating her employment. The court found that the Plaintiff had presented no cognizable evidence that this reason was pretextual.  Here, Boeing presents the declarations of

McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
804-775-1000

1
2
the ECARB members regarding the Plaintiffs' termination due to violations of company

procedures, and Plaintiffs can present no evidence that this is a pretext.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17
Likewise, the court in *Johnson v. Stein Mart, Inc.*, No. 3:06-cv-00341 (M.D. Fla. June

20, 2007) (case below 2006-SOX-52), granted summary judgment in favor of the Defendant

in a case where the reasons advanced by the Defendant for terminating the Plaintiff's

employment were convincingly unrelated to the Complainant's protected activity, where the

Plaintiff's failure to perform up to the Defendant's standards was well documented, and where

the Plaintiff failed to create a disputed issue of fact as to whether she would have been

terminated regardless of her protected activity.  The court found that the Plaintiff had only

offered her own conclusions and interpretations of the facts of the case, which were

insufficient to question the Defendant's personnel decision.  Here, Boeing's reasons for

terminating the Plaintiffs are unrelated to their alleged protected activity, it is well documented

that Plaintiffs violated Boeing policy, and Plaintiffs cannot present any evidence creating a

disputed issue of fact as to whether they would have been terminated absent any protected

behavior.  Plaintiffs offer only their own conclusions and interpretations of fact.

18

19

20

21

22

23

24
Similarly on point is *Frederickson v. The Home Depot, U.S.A., Inc.*, 2007-SOX-13

(ALJ July 10, 2007).  In that case, the ALJ granted summary decision based on the

Respondent's contention that the Complainant was discharged for an incident in which he

struck a vendor's representative in the groin, and that the Complainant would have been

discharged regardless of his alleged protected activity.  The ALJ observed that the

McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
804-775-1000

Complainant did not dispute that he was involved in the incident, although the circumstances and gravity of the conduct was disputed. The Complainant presented no evidence to establish disputed material facts related to the job action or disparity in its application. Moreover, the Complainant presented no evidence to support a finding that the managers involved in the discharge had knowledge of the protected activity. This case is remarkably similar to the *Fredrickson* case. Here, as there, Plaintiffs do not dispute that they were involved in the release of information outside of the company, although they may dispute the circumstances and gravity of their misconduct. Plaintiffs can present no evidence to establish disputed material facts related to their termination. And Plaintiffs can present no evidence to support a finding that the managers of the ECARB had any knowledge of any alleged protected activity.

For these reasons, the Court should find that Boeing has established by clear and convincing evidence that the Plaintiffs would have been terminated regardless of their participation in any alleged protected activity and should therefore dismiss Plaintiffs claims.

### IV. CONCLUSION

Plaintiffs cannot demonstrate that they engaged in any SOX protected activities. They cannot demonstrate that their participation in any protected activity was known to the managers who terminated their employment. They cannot demonstrate that participation in any protected activity contributed in any way to their termination. For these reasons, the Court should find that Plaintiffs cannot establish a prima facie case and should dismiss their claims.

McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
804-775-1000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Alternatively, the Court should hold that Defendant has demonstrated by clear and

convincing evidence, uncontradicted by Plaintiffs, that it would have terminated Plaintiffs'

employment regardless of their participation in any protected activity.  For that reason, the

Court should dismiss Plaintiffs claims.

Respectfully submitted, this 5th Day of November, 2009.

Defendant The Boeing Company

_____s/ Eric B. Martin_____
Eric B. Martin (WSBA # 32896)
   *EMartin@McGuireWoods.com*
Jonathan P. Harmon (*pro hac vice*)
   *JHarmon@McGuireWoods.com*
McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219
Tel: 804-775-1000
Fax: 804-775-1061


_____s/ Megan E. Blomquist_____
Megan E. Blomquist (WSBA # 32934)
   *MBlomquist@hwb-law.com*
Holmes Weddle & Barcott PC, local counsel
999 Third Avenue, Suite 2600
Seattle, Washington 98104
Tel:  206-292-8008

McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
804-775-1000

## **CERTIFICATE OF SERVICE**

1

2        I hereby certify that on November 5, 2009, I electronically filed the foregoing Motion

3   for Summary Judgment with the Clerk of the Court via the CM/ECF System which will send

4   notification of such filing to counsel as follows:

5

6                                John J. Tollefsen
                                 Tollerfsen Law Office, PLLC
7                                18225 8th Place West
                                 Lynnwood, Washington 98037-4901
8                                429-673-0300
                                 john@tollefsenlaw.com
9

10                               Thomas Edward Urschler
                                 Law Office of Thomas E Urschler
11                               8777 Big Bond Blvd.
                                 St Louis , MO 63119
12                               314-963-3335
                                 Email: turschler@sbcglobal.net
13

14

15   _____s/ Eric B. Martin_____
     Eric B. Martin (WSBA # 32896)
16         *EMartin@McGuireWoods.com*
     McGuire Woods LLP
17   One James Center
18   901 East Cary Street
     Richmond, Virginia 23219
19   Tel: 804-775-1000
     Fax: 804-775-1061
20

21

22

23

24