UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NICHOLAS P. TIDES,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>THE BOEING COMPANY,<br><br>　　　　　　　Defendant.<br><br>MATTHEW C. NEUMANN,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>THE BOEING COMPANY,<br><br>　　　　　　　Defendant. | CASE NO. C08-1601-JCC<br>　*Consolidated with C08-1736-JCC*<br><br>ORDER |

　　　This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. No. 28), Plaintiffs' Response and Cross Motion for Partial Summary Judgment (Dkt. No. 30), Defendant's Reply (Dkt. No. 32), Defendant's Response (Dkt. No. 33), and Plaintiffs' Reply (Dkt. No. 34.) Having considered the parties' briefing and the relevant record, the Court finds oral

ORDER — 1

argument unnecessary and hereby GRANTS Defendant's Motion for Summary Judgment and DENIES Plaintiffs' Cross Motion for Partial Summary Judgment.

## I. BACKGROUND

Section 404 of the Sarbanes-Oxley Act of 2002 ("SOX"), 15 U.S.C. § 7262, requires publicly traded companies to assess the design and effectiveness of internal controls over financial reporting. In 2007, Boeing's Corporate Audit organization had two groups performing auditing and testing of these controls. (Def.'s Mot. 4 (Dkt. No. 28).) One group, Audit SOX Finance, performed audits and testing on financial-control groups. (*Id.*) The other group, Audit IT SOX, performed audits and testing on information-technology controls. (*Id.*) The Audit IT SOX group was staffed by Boeing employees and supplemented by contractors provided by the accounting firm PricewaterhouseCoopers ("PwC"). (*Id.*)

Nicholas P. Tides began working for Boeing in 2003 as an export compliance specialist. (Pl.'s Resp. 9 (Dkt. No. 30).) Matthew C. Neumann was hired by Boeing in 1997 and moved into auditing in 2004. Both men became Audit IT SOX auditors in January 2007. (*Id.* at 11.) During their employment, Tides and Neumann made several complaints to supervisors about perceived auditing deficiencies, but eventually came to the conclusion that Boeing's auditing culture was unethical and that the work environment was hostile to those who sought change. (*Id.* at 7.) Eventually, Tides and Neumann felt the situation was serious enough that they contacted Andrea James, a reporter from the Seattle Post-Intelligencer, and provided her with information and documents. (*Id.* at 9; Def.'s Mot. at 11 (Dkt. No. 28).) When Boeing became aware of the contact and disclosures made to the reporter, Tides and Neumann were placed on suspension, and the matter was referred to a Boeing Employee Corrective Action Review Board ("ECARB"). (Def.'s Mot. 11 (Dkt. No. 28).) The ECARB convened on September 26, 2007, voted unanimously to terminate both Tides and Neumann, and informed the men of these decisions on September 28 and October 1, respectively. (*Id.* at 12.) Tides and Neumann filed whistleblower complaints with the Occupational Safety and Health Administration (OSHA) on December 26, 2007 and December 21, 2007, respectively. (*Id.*) After delays with OSHA, Plaintiffs decided to proceed in federal court. On

ORDER — 2

October 8, 2008 and November 7, 2008, respectively, OSHA issued letters acknowledging Plaintiffs Tides and Neumann's right to proceed *de novo* in federal court.

## II. APPLICABLE LAW

### A. Summary Judgment Standard

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B. Whistleblower Protection Under SOX

Section 806 of SOX, 18 USC § 1514A(a)(1), prohibits employers of publicly traded companies from "discriminat[ing] against an employee in the terms and conditions of employment" for "provid[ing] information . . . regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders." *See Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996 (9th Cir. 2009).

Section 1514A(b)(2) further specifies that § 1514A claims are governed by the procedures applicable to whistleblower claims brought under 49 U.S.C. § 42121(b). Section 42121(b)(2)(B), in turn, sets forth a burden-shifting procedure by which a plaintiff is first required to make out a *prima facie* case of retaliatory discrimination; if the plaintiff meets this burden, the employer assumes the burden of demonstrating by clear and convincing evidence that it would have taken the same adverse employment action in the absence of the plaintiff's protected activity. *See id.*

ORDER — 3

## III. ANALYSIS

The Court concludes first that SOX does not prohibit termination for disclosures to the media. Second, the Court finds that whether or not Tides and Neumann engaged in any activity protected by SOX, Boeing was entitled to terminate them for leaking confidential documents to the media. The Court finds that it need not consider whether Tides and Neumann have made a *prima facie* case. Boeing has shown by clear and convincing evidence that it would have terminated Tides and Neumann for their disclosures to the media even in the absence of activity that may have been protected.

### A. Whistleblowing to the Media is not Protected Activity

Communications with the media are not protected by SOX. Section 806(1)(a) of SOX protects employees against retaliation from employers when the employee provides information or assistance to "(A) a Federal regulatory or law enforcement agency; (B) any Member of Congress or any committee of Congress; or (C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct)." 18 U.S.C. 1514(a)(1). Plaintiffs concede that this list is the most specific of all whistleblower-protection statutes, but asks the Court to read it expansively. (Pl.'s Resp. 29 n.126 (Dkt. No. 30).)

Plaintiffs seek to draw parallels to other statutes with more expansive whistleblower protection, but by the clear language of § 806, such comparisons are without merit. Plaintiff also refers to a letter from an OSHA investigator, which states "OSHA's position is that talking to the press is a protected activity under SOX. I also mentioned the *Overall* case as one source of authority to support OSHA's position. *See In the Matter of: Curtis C. Overall, Complainant v. Tennessee Valley Authority, Respondent*, ARB Case No. 04-073, ALJ Case No. 99-ERA-25, July 16 2007." (Pl.'s Resp. Ex. 1 (Dkt. No. 30).) The Case referenced in the letter deals with the Energy Reorganization Act, not SOX, and is also inapposite.

Congress has made clear that while SOX was intended to protect whistleblowers, only certain types of whistleblowing would be afforded protection. Leaking documents to the media is not one of them.

**B. Plaintiffs Failed to Show Pretext**

Tides and Neumann argue that Boeing's reliance on the media disclosures to fire them was merely a pretext, and that the firings actually occurred as a response to protected activity such as complaints to their supervisors. The stated grounds for their dismissal must have been pretext, Plaintiffs argue, because dissemination of information outside the company is permitted by Boeing corporate policies. (Pl.'s Resp. 33–34 (Dkt. No. 30).) Boeing Procedure 3439 states: "Nothing in this procedure should be construed as preventing employees from: 1. Discussing or releasing information about wages, hours, working conditions, or other terms and conditions of employment to the extent privileged by Section 7 of the National Labor Relations Act or other law." (Pl.'s Resp. Ex. 2 (Dkt. No. 30).)

Boeing's position is that unauthorized media leaks are a violation of confidentiality rules, and are not privileged by the NLRA. Boeing maintains a set of policies and procedures governing the sharing of company information with outsiders. (Def.'s Mot. 10 (Dkt. No. 28).) Boeing claims that Tides and Neumann were aware of these policies and were reminded of them in April 2007. (*Id.*)

First, the Court examines whether Tides and Neumann's disclosures were privileged by the NLRA. Section 7 of the NLRA states:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158 (a)(3) of this title.

29 U.S.C. § 157. It is true that the hostile work environment described by Tides and Neumann could be considered "working conditions." *See Ft. Stewart Sch. v. Fed. Labor*

ORDER — 5

*Relations Auth.*, 495 U.S. 641, 645–46 (U.S. 1990) (quoting *Dep't of Def. Dependents Sch. v. FLRA*, 274 U.S. App. D.C. 299, 301, 863 F. 2d 988, 990 (1988) ("The term 'working conditions' ordinarily calls to mind the day-to-day circumstances under which an employee performs his or her job")). But Boeing policies only protect the release of information about working conditions to the extent privileged by Section 7. And this section relates exclusively to the formation of unions and the practice of collective bargaining. Tides and Neumann have offered no reason to believe that their statements and disclosures, allegedly related to fraud and a hostile work environment designed to conceal that fraud, should be protected by Section 7 of the NLRA. The Court finds that Boeing policies do not protect the disclosures made by Tides and Neumann.

Second, the Court examines whether Boeing's reasons for dismissal were pretextual. The Court looks to a similar case in the Ninth Circuit for instruction. In *Van Asdale*, 577 F.3d 989 (9th Cir. 2009), the plaintiffs were in-house intellectual-property attorneys for a gaming-machines company who had recently received high-level promotions. Shawn Van Asdale was fired for poor performance seventeen days after receiving an exceptional performance review. Lena Van Asdale was fired several weeks later for requesting sensitive company information. Three days prior to Shawn's termination, the Van Asdales mentioned to their supervisor that they suspected securities fraud had occurred in a recent merger. The court held that a reasonable fact-finder could determine that the asserted grounds for dismissal were pretextual for four reasons: (1) the contrast between the employer's account of Shawn's poor performance and his record of promotions and excellent performance reviews; (2) the conclusory support for the employer's contention that Lena's requests were improper; (3) a complete lack of specific evidence supporting the employer's claims of poor performance; and (4) the close proximity of Shawn's firing to the alleged protected activity. *Id.* at 1004.

Tides and Neumann have not shown that Boeing's actions were similarly pretextual. The grounds for dismissal were not vague and unsupported as they were in

ORDER — 6

*Van Asdale*. Tides and Neumann do not deny that they provided internal documents to a reporter; they merely claim that such actions are protected. The Court has found that they are not. Accordingly, Boeing has shown, by clear and convincing evidence, that Tides and Neumann would have been dismissed independently of any activity protected under SOX.

**IV. CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion for Summary Judgment (Dkt. No. 28) and DENIES Plaintiffs' Cross Motion for Partial Summary Judgment (Dkt. No. 30). The Clerk is DIRECTED to close the case.

SO ORDERED this 9th day of February, 2010.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER — 7